UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MELENDEZ CONCRETE INC.,            No. 11-09-12334 JA
                                                      Chapter 11
      Debtor.

**MEMORANDUM OPINION**

This matter came before the Court on Community Bank's Motion to Dismiss or Convert Case to Chapter 7 filed July 30, 2009. Following an evidentiary hearing on September 1, 2009, the Court took the matter under advisement. Community Bank (the "Bank") seeks dismissal or conversion of Debtor's chapter 11 case under 11 U.S.C. §1112(b) on the grounds that the Debtor committed various prepetition bad acts, failed to timely file operating reports, failed to produce documents as required by an order of this Court, failed to adequately insure the Bank's equipment collateral, failed to disclose claims against insiders, and has suffered continuing losses or diminution of the estate. The Debtor contends conversion or dismissal is inappropriate because 1) prepetition bad acts may not be considered in connection with a motion to dismiss or convert under 11. U.S.C. §1112(b); 2) the Debtor has now filed the operating reports, substantially complied in good faith with the order, adequately insured the equipment collateral, and inadvertently failed to disclose the claims against insiders; and 3) the estate is not suffering losses.

After considering the Motion to Dismiss or Convert and the evidence admitted at trial, and being otherwise informed, the Court will deny the Motion to Dismiss or Convert contingent on the Debtor's compliance with certain requirements specified below.

FACTS

Melendez Concrete, Inc. ("Melendez Concrete" or "Debtor") is a construction company that ceased operations in or around February 2009. It commenced a voluntary chapter 11 case on May 29, 2009 to conduct an orderly liquidation of its assets. Melendez Concrete is a small business debtor as defined by 11 U.S.C. §101(51D). Miguel Melendez (Mr. Melendez) is Secretary of and Designated Agent for the Debtor.

The Bank, a secured creditor of the Debtor, made three loans to the Debtor. As of May 30, 2009, the Debtor owed the Bank $381,940.05, exclusive of attorney's fees. Of that amount, $342,639.64 is secured by the Debtor's inventory, chattel paper, accounts, equipment, and general intangibles, and $132,328.74 of the $342,639.64 is also secured by certain vehicles.[1]

On October 20, 2008, after Debtor defaulted on Loan 505095001, the Bank commenced litigation against the Debtor in state court to collect that loan and foreclose its security interest in the collateral securing the loan. Subsequently, Debtor defaulted on the remaining two loans by failing to make required payments.

On March 13, 2009, Melendez Concrete sold certain titled vehicles not pledged to the Bank to an insider of the Debtor, Sangre de Christo Gravel Products LLC ("Sangre de Christo"),

---

[1] Community Bank made three loans to the Debtor, designated Loan 505095001, Loan 506015002, and Loan 505105002. Community Bank made Loan 505095001 on September 7, 2005. Community Bank made Loan 505105002 on October 11, 2005. No evidence was presented on when Community Bank made Loan 506015002. As collateral for Loan 505095001, and future advances, which included Loan 505105002, Debtor granted Community Bank a security interest in all of Debtor's inventory, chattel paper, accounts, equipment, and general intangibles, then owned or thereafter acquired, and proceeds thereof. As collateral for Loan 505105002, Debtor granted Community Bank a security interest in certain titled vehicles. The amounts Debtor owed Community Bank on Loan 505095001, Loan 506015002, and Loan 505105002, as of May 30, 2009, were $210,310.90, $39,204.41, and $132,328.74, respectively, which totals $381,940.05. Because the security agreements do not contain dragnet clauses, and no evidence was presented on when Community Bank made Loan 506015002 or whether it is secured, the record does not establish whether the Bank has a secured claim for Loan 506015002. .

-2-

for $71,000. On or about March 17, 2008, Melendez Concrete sold equipment pledged to the Bank for $36,947 in violation of one of the security agreements, and did not pay the sale proceeds to the Bank. In early April 2009, Melendez Concrete collected approximately $41,000 on a receivable pledged to the Bank, and did not pay the sale proceeds to the Bank in violation of a security agreement.[2] Melendez Concrete used those funds to pay unsecured creditors, including one or more creditors whose claims Mr. Melendez and his father personally guaranteed.

On March 26, 2009, shortly before a scheduled deposition of Mr. Melendez, counsel for Melendez Concrete sent an email message to counsel for the Bank stating "We surrender," and agreeing to entry of a stipulated judgment against Melendez Concrete. After the parties could not agree on the terms of the stipulated judgment, the Bank sought and obtained an order from the state court, entered May 14, 2009, requiring Mr. Melendez to appear for a deposition, and ordering Melendez Concrete to surrender certain equipment and vehicles to the Bank by May 28, 2009. Melendez Concrete commenced this chapter 11 case on May 29, 2009 to avoid complying with the state court order.

Post-petition, the Court entered a stipulated order authorizing the Bank to take a Rule 2004 examination *duces tecum*. The order provided, in part, that "the debtor shall provide . . . copies of the documents listed on Exhibit A [to the order] to counsel for the Bank . . . on or before August 7, 2009," which was in advance of a Rule 2004 examination scheduled for August 14, 2009. The Bank complains that the Debtor, in violation of this Court's order, failed to

---

[2] The Debtor delivered two checks to Community Bank on or about April 21, 2009 in the total amount of $17,528.43. Both checks were returned for insufficient funds.

produce its initial report, documents showing the sale of equipment on March 17, 2009 to Richie Brothers, and cancelled checks reflected on certain bank statements. The Debtor produced other requested documents. The Debtor's explanation for not producing requested documents is that the initial report had not yet been prepared[3], the Debtor did not understand that "items" means checks,[4] and that the requested sale documents were in storage and would be burdensome to find.

In its schedules of assets and liabilities filed June 18, 2009, Debtor scheduled total assets it valued at $1,488,221.34, but failed to schedule claims of the Debtor against insiders in the amount of approximately $680,000. Mr. Melendez testified that he did not realize those claims were assets of the estate that needed to be scheduled. On June 23, 2009 the Debtor filed a financial statement that disclosed insider claims as of October 30, 2008 in the Financial Notes. Following the hearing on the Bank's Motion to Convert or Dismiss, on September 9, 2009 the Debtor amended its schedules to list the insider claims as an asset of the estate.

On August 19, 2009, the Debtor filed its first small business monthly operating report in this case, which was a combined report for the period of June and July 2009. No financial statements are attached to the operating report. Consistent with the Debtor's testimony that all operations of the Debtor ceased in or around February 2009, the operating report reflects no

---

[3] On June 15, 2009, the Debtor prepared what is now the equivalent of what previously was termed an initial report but did not provide a copy to Community Bank. That document is entitled United States Trustee Financial Requirements Checklist, Certifications and Declarations The Debtor is required to provide that document to the United States Trustee before the initial debtor interview of the Debtor conducted by the United States Trustee, but it is not required to be filed of record. No evidence was presented regarding the date of the initial debtor interview.

[4] The Bank requested copies of bank statements with items. Under Section 4-104(9) of the Uniform Commercial Code, enacted in New Mexico as §55-4-104(9) NMSA 1979, an "item" is defined as "an instrument or a promise or order to pay money handled by a bank for collection or payment," and includes a check.

income or expenses during the reporting period. The small business monthly operating report for the period of August 2009 has not been filed; the report is not due until September 15, 2009.

Debtor's equipment and vehicles are insured under a policy listing Sangre de Cristo as the named insured. Debtor's agent testified that, in consultation with Debtor's insurance agent, all of Debtor's equipment and vehicles were insured under a Sangre de Cristo policy in an effort to save money. The Bank asserts that the insurance policy failed to provide coverage for certain equipment and vehicles, [5] while providing insufficient coverage for other equipment and vehicles, [6] and failed to list the Bank as an additional insured. Mr. Melendez testified that he had requested the insurance agent to add the Bank as an additional insured.

Mr. Melendez's uncontroverted testimony was that the total value of the equipment and vehicles owned by Debtor is approximately $1.3 million to $1.4 million if sold in an orderly fashion and not by auction, and that in the current depressed market this is not the time or place to sell construction equipment by auction. The schedules reflect total debt of $1,328,940.53, including the debt owed to the Bank of $381,940.05 as of May 30, 2009. The Debtor has not sold any equipment post-petition, and has limited funds for advertising until some equipment is sold.

---

[5] A few items of Debtor's equipment appear not to be included in the list of insured equipment, including two items pledged to Community Bank, a 1989 Ford F350XL and a 1987 Caterpillar CP-323. These comprise a small portion of the equipment.

[6] Exhibit 15, the CNA Inland Marine Policy, contains "Blanket coverage on small tools and equipment used in your business" with an insurance limit of $10,000 in the aggregate and $1,000 per item. Mr. Melendez testified that the amount of this "blanket coverage" is in accordance with ordinary industry practices. He further testified that the total value of the equipment itemized on pages 16 and 17 of Exhibit 16, designated as light equipment, exceeded the $10,000 limit. There appear to be 47 pieces of small tools and equipment covered under the "blanket coverage" but there was no testimony regarding the actual value of the small tools and equipment.

Debtor has not filed a plan or disclosure statement. The exclusivity period for Debtor to file its plan and disclosure statement expires November 25, 2009.

DISCUSSION

A chapter 11 case may not be converted or dismissed under 11 U.S.C. §1112(b) except for "cause." If cause is established, the Court must dismiss or convert the case, or appoint a chapter 11 trustee, unless the court finds "unusual circumstances . . . that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. §§1104(a)(3) and 1112(b)(1). If the court finds such unusual circumstances exist, the court is not required to convert or dismiss or to appoint a trustee.[7] If no such unusual circumstances are found, the court must not convert or dismiss the case if (i) the debtor or another party objects, (ii) the act or omission is other than a substantial or continuing loss to or diminution of the estate coupled with the absence of a reasonable likelihood of rehabilitation, and (iii) the objecting party establishes that there is a reasonable likelihood that a plan will be confirmed within a time specified in the statute, that there exists a reasonable justification for the act or omission, and that the act or omission will be cured within a reasonable period fixed by the court. 11 U.S.C. §1112(b)(2).

---

[7] *See, e.g., In re Franmar, Inc.,* 362 B.R. 170, 180 (Bankr. D.Colo. 2006)(stating that even if 'cause' to dismiss is established under the statute, section 1112(b)(1) provides a court with discretion to deny a motion to dismiss or convert if the court finds '. . . unusual circumstances . . . that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.'"); *In re Gateway Access Solutions, Inc.,* 374 B.R. 556, 560 (Bankr.M.D.Pa. 2007)(noting that dismissal or conversion may be disallowed when the debtor identifies 'unusual circumstances' that establish conversion is not in the best interest of creditors).

The threshold issue, thus, is whether "cause" exists to convert or dismiss. Section 1112(b)(4) lists sixteen nonexclusive grounds that constitute cause. [8] *In re AmriCERT, Inc*., 360 B.R. 398, 401 (Bankr.D.N.H.2007) ("The list [contained in 1112(b)(4)] is not exhaustive, and a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose.") (citations omitted). Although this section restricts the Court's discretion, the Court still maintains some degree of discretion to deny the relief requested. *Gateway Access Solutions*, 374 B.R. at 560; *Franmar,* 361 B.R. at 180.

The Bank asserts that cause exists to dismiss or convert the case under 11 U.S.C. §1112(b)(4), including (b)(4)(A), (C), (E) and (H) due to Debtor's conduct both pre-petition and post-petition. The Bank asserts that pre-petition, Debtor intentionally delayed state court litigation during which time it sold some of the bank's collateral and collected an account, and

---

[8] Section 1112(b)(4) provides:

For purposes of this subsection, the term 'cause' includes-(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

used the proceeds to pay other creditors in violation of the Bank's lien rights. The Bank asserts that post-petition Debtor failed to comply with a discovery order of the Court; failed to maintain appropriate insurance coverage for Debtor's equipment and vehicles; failed to disclose claims against insiders that are property of the estate; and failed to timely file proper operating reports.

<u>The Debtor's Pre-petition Conduct is Relevant to the Court's Consideration of "Cause"</u>

Debtor contends that its prepetition conduct is irrelevant to a motion to dismiss or convert. This contention is not correct. Prepetition conduct of a debtor can be considered to determine whether cause exists under §1112(b)(4) to convert or dismiss on the ground the chapter 11 case was filed in bad faith.[9] To determine whether a chapter 11 case was filed in bad faith, courts consider all relevant factors, including (i) whether the petition serves a valid bankruptcy purpose such as by preserving a going concern or maximizing the value of the debtor's estate; (ii) whether the petition is filed merely to obtain a tactical litigation advantage; (iii) whether the debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation; (iv) whether it is a single asset case, (v) whether there are one or a very few unsecured creditors, (vi) whether there is no ongoing business or employees; (vii) whether the pre-petition conduct of the debtor has been improper; and (viii) whether the case is filed to evade one or more court orders.[10] No single

---

[9]*See, e.g. In re Integrated Telecom Express, Inc.,* 384 F.3d 108, (3rd Cir. 2004); *In re Nursery Land Development, Inc*., 91 F.3d 1414, 1415 (10th Cir. 1996); *In re Trident Associates Ltd. Partnership*, 52 F.3d 127,130 (6th Cir. 1995); *In re Phoenix Piccadilly, Ltd*., 849 F.2d 1393, 1394 (11th Cir. 1988).

[10] *See Integrated Telecom Express, Inc.,* 384 F.3d at 122 (applying one or more of the factors); *In re Nursery Land Development, Inc*., 91 F.3d at 1416 (same); *Trident Associates Ltd. Partnership*, 52 F.3d at 130 (same); *Phoenix Piccadilly, Ltd*., 849 F.2d at 1394 (same).

-8-

factor is determinative, and the weight given each factor will necessarily vary with the facts and circumstances of each case.[11]

Factors (vi), (vii) and (viii) support a finding of bad faith. Debtor engaged in conduct to delay the Bank's exercise of remedies prepetition during which time it sold or collected and then paid about $78,000 of the Bank's collateral, in breach of a security agreement, to creditors other than the Bank, including a creditor whose debt was personally guaranteed by Mr. Melendez and his father. Debtor commenced the chapter 11 case to avoid compliance with a state court order requiring surrender of the Bank's collateral; has no business operations; and has only one employee. On the other hand, the schedules list two unsecured priority claims and twelve unsecured nonpriority claims totaling $842,372.65, in addition to the Bank's claim of $381,940.05. The uncontroverted testimony was that the Debtor's equipment assets, all or most of which are pledged to the Bank, have a value of approximately $1.3 million to $1.4 million, and that in the current recessionary market an orderly sale of Debtor's equipment in chapter 11 rather than by auction provides the best prospect for maximizing value for the benefit of creditors as a whole. Mr. Melendez and his father are motivated to maximize value as a result of personal guarantees not only to the Bank but also to unsecured creditors. The Court is persuaded by these facts and the testimony that the petition serves a valid bankruptcy purpose. Under these circumstances, the Court gives particular weight to factor (i), and finds that the Debtor did not file the chapter 11 case in bad faith.

---

[11] *Cf. Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983) (applying a factors test in the context of whether a chapter 13 plan is proposed in good faith).

Case 09-12334-j11    Doc 40    Filed 09/15/09    Entered 09/15/09 17:10:33 Page 9 of 17

### The Enumerated Grounds for Dismissal or Conversion Should be Evaluated under a Materiality Standard

The Bank asserts that cause to convert or dismiss also exists under several of the enumerated grounds contained in § 1112(b)(4). The Debtor counters that it is in substantial compliance with the prescriptions of § 1112(b)(4). The parties' contentions raises the question whether the materiality of the Debtor's infractions are to be considered. To determine whether the Court should apply a materiality standard to the enumerated grounds set forth in § 1112(b)(4), the words of the statute should be read in context and with a view to carry out the purpose of the statutory scheme.[12] A fundamental purpose of chapter 11, in the case of a reorganization, "is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513,528, 104 S.Ct. 1188 (1984). Fundamental purposes of chapter 11 also include maximizing the value of the estate for the benefit of all creditors, promoting equality of distribution among creditors, and avoiding piecemeal, preferential dismemberment of a debtor's assets. *In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 494 (Bankr. M.D. Fla. 1999).

A materiality standard should be applied when assessing whether cause exists under the enumerated grounds that constitute cause under § 1112(b)(4). Not applying a materiality standard to the enumerated grounds would undermine the fundamental purposes of chapter 11. For example, it is common sense that a chapter 11 case should not be converted or dismissed

---

[12] Cf. *Bailey v. U.S.*, 516 U.S. 137, 145, 116 S.Ct. 501 (1995) (the Court considered the meaning of the word "use" under 18 U.S.C. §924(c)(1) as well as its "placement and purpose in the statutory scheme"); *Been v. O.K. Industries*, Inc., 495 F.3d 1217, 1227 (10TH Cir. 2007) (where the Court interpreted §202(a) of the Packers and Stockyards Act ("PCA"), 7 U.S.C. §181 et seq. "in light of the purposes Congress sought to serve". The Court read "the words of the statute in their context and with a view to their place in the overall statutory scheme").

-10-

under §1112(b)(4)(F) or §1112(b)(4)(I) if a debtor in possession that is generally discharging its duties files a monthly operating report a few days late, even if without just excuse, or pays a post-petition tax a day late.

<u>"Cause" Has Not Been Demonstrated Under § 1112(b)(4)(A), (C) or (E): the Debtor's Failures Are Not Material Enough to Constitute "Cause"</u>

The Bank asserts that cause to convert or dismiss exists under 11 U.S.C. §1112(b)(4)(A), which provides that cause exists if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." This case has been pending for less than four months. The Debtor has no business operations. The Debtor's monthly operating report reflects no post-petition income, and that no post-petition expenses have been paid. The Debtor has incurred minimal post-petition expenses. The Court finds that cause does not exist under §1112(b)(4)(A).

The Bank asserts that cause to convert or dismiss exists under 11 U.S.C. §1112(b)(4)(C) based on failure to maintain appropriate insurance that poses a risk to the estate or to the public. Applying a materiality standard, the Court finds, based on the evidence presented, that the Debtor's insurance in place does not pose a risk to the estate sufficiently material to constitute cause under 11 U.S.C. §1112(b)(4)(C) and poses no risk to the public, and therefore alone does constitute cause to convert or dismiss.

The Bank asserts that cause to convert or dismiss exists under 11 U.S.C. §1112(b)(4)(E), which provides that cause includes "failure to comply with an order of the Court," as a result of the Debtor's failure to produce all of the requested documents on a timely basis as required by a Stipulated Order to Take Rule 2004 Examination Duces Tecum. Cause has not been established

-11-

under this ground for two reasons. First, the nature and extent of documents not produced was not sufficiently material to rise to the level of the type of violation of a court order that results in conversion or dismissal of a chapter 11 case. Second, reading the language of §1112(b)(4)(E) in the context used and with a view to its place in statutory scheme of chapter 11, the Court concludes that violation of a document production requirement in a stipulated order authorizing a creditor to take a Rule 2004 examination of a debtor is not a type of violation of an order encompassed by §1112(b)(4)(E).

### The Debtor's Failure to Timely File Proper Operating Reports and Failure to Schedule or Disclose Substantial Assets Constitutes "Cause" to Dismiss or Convert under§1112(b)

Finally, the Bank asserts that cause exists for conversion or dismissal based on the Debtor's failure timely to file proper operating reports or to disclose certain claims of the Debtor against insiders. This assertion implicates 11 U.S.C. §1112(b)(4)(F) ("unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter")[13] and §1112(b)(H) ("failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any)").[14] The Debtor's schedules filed June 16, 2009 failed to list

---

[13] Bankruptcy Rule 1007 requires a debtor to file schedules of assets and liabilities as prescribed by the appropriate Official Forms within 15 days after the petition date (or 15 days after entry of the order for relief in an involuntary case), unless the court extends such time. The schedules are executed by an authorized representative of the debtor and certified, under penalty of perjury, to be true and correct. No extension of the time for Debtor to file it schedules was sought or obtained in this case.

[14] 11 U.S.C. §§1106(a)(1) and 1107(a) read in conjunction with § 704(8) require a debtor in possession to file monthly operating reports as required by the United States Trustee. The United States Trustee requires debtors in possession in small business chapter 11 cases to file small business debtor monthly operating reports by the fifteenth day after the end of the reporting period, unless otherwise ordered by the Court. *See also* 11 U.S.C. §1116.

-12-

claims against various insiders of the Debtor totaling some $680,000.[15] The small business monthly operating report filed by the Debtor for June and July 2009 similarly failed to disclose those claims. The information the Debtor provided to the United States Trustee prior to the initial debtor interview does not include a balance sheet as of the month-end immediately preceding the filing, with the explanation that it was not available. If provided, it should have disclosed the claims against insiders. Although the Debtor filed a balance sheet as of October 31, 2008 that disclosed claims against insiders, the Debtor filed its chapter 11 case almost seven months later and had a duty to schedule and disclose those claims as of the petition date. Further, the Debtor, without excuse, failed to file its first small business monthly operating report due July 15, 2009 until August 19, 2009, and as part of the report that was filed failed to include a financial statement. The first report, and only report filed to date, was filed over a month late even though, as prepared, the report should have taken very little time to complete. It reported no income or expenses during the reporting period, and failed to include an internally prepared income statement and balance sheet as required.

Under the facts and circumstances of this case, and taking into account the limited discretion Congress has afforded to bankruptcy courts with respect to the enumerated grounds for cause under §1112(b)(4), the Court finds that the failures on the part of the Debtor to schedule or disclose substantial claims against insiders until raised by the Bank's motion to

---

[15] Although the Debtor, on September 9, 2009, filed an amendment to Schedule B to reflect receivables due from insiders in the amount of $681,352.95, such amendment was filed over three months after commencement of the chapter 11 case, well after the first meeting of creditors, and only after Debtor's failure to schedule or disclose the insider claims was asserted at the hearing on the motion to convert or dismiss. The Court is not determining, however, that the failure to schedule or disclose the insider claims constituted a knowing and willful concealment.

convert or dismiss, failure to timely file the June 2009 monthly operating report, and failure to include an income statement and balance sheet as part of the operating reports for either June or July 2009, together with pre-petition conduct on the part of the Debtor, discrepancies between the Debtor's equipment list and the equipment list for the insurance policy, and the Debtor's lack of care in producing documents required by the Rule 2004 order, constitute cause to dismiss or convert.[16] These circumstances suggest a pattern of lack of diligence by the Debtor in complying with obligations of a litigant or debtor in possession.

Since "cause" has been demonstrated, the Court must convert or dismiss the chapter 11 case "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1). The Bankruptcy Code does not define "unusual circumstances" within the meaning of 11 U.S.C. 1112(b) but does give a clue. When Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, it used the phrase "absent unusual circumstances" in 11 U.S.C. § 1112(b)(1), while using the different phrase "absent extraordinary and compelling circumstances" in the newly enacted 11 U.S.C. §1116.[17] The court need not find that the circumstances are "extraordinary and compelling" to find that they are "unusual."

Use of the phrase "unusual circumstances" contemplates circumstances not common in most chapter 11 cases and under which the purposes of the Bankruptcy Code would be better served by the case remaining in chapter 11. *See In re Alternate Fuels, Inc.,* 2009 WL 1298447

---

[16] The Court is not finding that the Debtor willfully concealed the claims against insiders.

[17] The Merriam-Webster Online Dictionary defines "unusual" to mean "uncommon," "extraordinary" to mean "exceptional to a very marked extent," and "compelling" to mean "forceful" or "convincing."

*4 (Bankr. D. Kan. 2009) (the code does not define "unusual circumstances" but it "clearly contemplates conditions that are not common in most chapter 11 cases."); *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148 (Bankr. D.N.M. 2008) (to the same effect). This construction of the language "unusual circumstances" is consistent with the ordinary meaning of the terms, and with use of the terms in the context of the statute. "The import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." " 7 *Collier on Bankruptcy* ¶ 1112.04[3], p. 1112-26 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev.2008).

The Debtor commenced its chapter 11 case to effectuate an orderly liquidation of its construction equipment and vehicles to not only pay the Bank in full, but to maximize value for creditors as a whole. Mr. Melendez testified the total value of the equipment and vehicles based on his experience is $1.3 million to $1.4 million if sold in an orderly fashion and not by auction, which is well in excess of three times the amount necessary to fully satisfy the Bank's claims, and enough to pay all creditors nearly in full. Mr. Melendez testified that he is knowledgeable and experienced in the construction industry, has purchased and sold a substantial amount of construction equipment over the years, and that this is not the time or place to sell construction equipment by auction to maximize value.

It is not common for the value of a debtor's assets in a chapter 11 to exceed the amount of the debt secured by those assets by more than 300%, and for a debtor by maximizing value in a chapter 11 through an orderly liquidation to have a good prospect of not only paying the secured creditor in full but also paying all or a substantial portion of unsecured debt that well

-15-

exceeds the amount of secured debt. The depth and severity of the current recession is also not a common circumstance, in which an orderly sale of construction equipment by an experienced owner financially motivated to maximize value is of unusual value and benefit to the estate and its creditors as a whole. Based on the evidence before the Court, and common knowledge of the depressed market in New Mexico in the current recessionary environment, the Court finds these are unusual circumstances that establish that dismissal or conversion of Debtor's chapter 11 case would not be in the best interests of the creditors and the estate.

The Court is persuaded that Debtor should be afforded the opportunity to propose a plan for the orderly liquidation of its assets and payment of all creditors if the Debtor complies with certain requirements. Those requirements are that the Debtor, by October 20, 2009: (1) file its plan and disclosure statement; (2) amend its operating reports (including any operating reports to be filed prior to October 20, 2009) to include a current financial statement for months in question;[18] (3) obtain insurance for any of the Debtor's equipment or vehicles not currently insured; (4) increase the amount of blanket insurance coverage on small tools and equipment as necessary to fully insure those items subject to the deductible in place; and (5) obtain insurance coverage naming the Bank as an insured or loss payee. If any of these requirements are not satisfied timely, the Court will convert the case to Chapter 7, finding that, given the amount of equity in the Debtor's equipment and the total amount of unsecured claims, conversion, rather than dismissal, is in the best interest of the estate.

---

[18] The Court expects the Debtor to file its small business operating reports timely, and to seek an extension of the filing dates if circumstances prevent it from doing so.

-16-

This Memorandum Opinion constitutes the Courts findings of fact and conclusions of law issued in accordance with Rule 7052, Fed.R.Bankr.P. and Rule 9014, Fed.R.Bankr.P. An order consistent with this Memorandum Opinion will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: September 15, 2009

Copies to:
James R. Jurgens
Jurges & With, P.A.
100 La Salle Circle, Suite A
Santa Fe, NM 87505
*Attorneys for Community Bank*

Daniel J. Behles
Cuddy & McCarthy, LLP
7770 Jefferson NE, Suite 305
Albuquerque, NM 87109
*Attorneys for Debtor*

Leonard K. Martinez-Metzgar
P.O. Box 608
Albuquerque, NM 87103-0608
*Office of the United States Trustee*